UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**SHELLEY T. CAMPBELL,**

**Plaintiff,**

**-v-**                                    **6:11-CV-1413 (NAM/ATB)**

**TIMOTHY ADUDDELL and JERRY WHITLOCK,**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Shelley T. Campbell
P.O. Box 145
Old Chatham, New York 12136
Plaintiff, *pro se*

Trevett Cristo Salzer & Andolina P.C.
Eric M. Dolan, Esq. of Counsel
2 State Street Suite 1000
Rochester, New York 14614
Attorney for Defendant Jerry Whitlock

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## BACKGROUND

While represented by counsel, plaintiff filed this action in New York State Supreme

Court, County of Oneida, on October 27, 2011. The complaint (Dkt. No. 1) alleges state law

causes of action for fraud, breach of contract, and defamation. Defendant Jerry Whitlock, a

resident of Florida, removed the action to this Court on the ground of diversity jurisdiction. 28

U.S.C. § 1332. Defendant Timothy Aduddell, alleged in the complaint to be a resident of

Oklahoma, has not been served with process. After United States Magistrate Judge Andrew T.

Baxter granted plaintiff's attorney's motion for leave to withdraw from representation of plaintiff,

plaintiff has been proceeding *pro se*. Defendant Whitlock moves to dismiss the complaint and for

summary judgment.[1]  Plaintiff moves for leave to serve an amended complaint.  As set forth below, the Court grants Whitlock's motion (Dkt. No. 42) to dismiss the initial complaint, and grants in part and denies in part plaintiff's motion (Dkt. No. 49) for leave to amend the complaint.

## THE COMPLAINT

The complaint (Dkt. No. 1), filed in New York State Supreme Court, Oneida County on October 27, 2011, claims that defendant Timothy Aduddell was an officer, director, and shareholder of Aduddell Indus., and that defendant Jerry Whitlock was a director and shareholder of Aduddell Indus.  According to the complaint, Whitlock "entered into a personal and social relationship with the plaintiff"; knew of her "financial condition and her vulnerability"; and knew that she was not a sophisticated investor.

In the first cause of action for fraud and breach of contract, plaintiff claims as follows: that defendants carried on a course of conduct to misrepresent information with regard to Aduddell Indus. to persuade plaintiff to invest in the company; that Whitlock convinced her that investing and purchasing stock in Aduddell Indus. "would result in significant gains"; that Whitlock "promised to cover any losses incurred by the plaintiff related to the investment in the corporation"; and that defendants "guaranteed to the plaintiff that there would be no loss of her investment and promised to return, at a minimum, the entire $60,000.00 sum invested in the corporation."  The complaint continues:

> The various acts conducted by the defendants in relation to their
> misrepresentations and fraud of the plaintiff are as follows:

---

[1] In view of the Court's holdings herein, the Court does not reach Whitlock's summary judgment motion.

A. Defendant Whitlock stated on more than one occasion that he had maxed out his shares in the corporation that he could buy as a director but wished he could buy a lot more of this stock.

B. Defendant Whitlock repeatedly stated that the investment in Aduddell Industries, Inc., was "a sure bet and a sure thing". Defendant Whitlock promised to "cover her investment if anything went wrong".

C. After plaintiff lost her entire investment, Plaintiff requested on many occasions that defendant Whitlock honor his promise to protect her against any loss. Defendant Whitlock refused to return any of the plaintiff's investment in the corporation stock. Defendant Whitlock directed his attorney to advise Plaintiff to stop any further attempts at contacting defendant Whitlock directly and thereby establishing and confirming the breach of this agreement on September 25, 2009, in a letter from the Katten Law Firm (Jonathan Feld, Esq.) of Chicago, Illinois.

D. Upon information and belief, defendant Whitlock manipulated plaintiff into the purchase of Aduddell Industries, Inc., (formerly known as Zenex International, Inc.) shares, with one of his goals to help raise the share price and then without advice to the plaintiff sold his shares earning millions of dollars while the plaintiff lost her investment.

E. Defendant Whitlock knowing that the plaintiff would be investing nearly her entire liquid net worth, took advantage of his "insider" position in order to entice the plaintiff to make the $60,000.00 purchase of Aduddell stock and then sold his shares resulting in significant gain for his investment and the total loss of the plaintiffs investment.

F. In order to further defendant's scheme to "con" the plaintiff out of her investment he arranged for communication between the CEO of the corporation, defendant Aduddell who during several conversations assured the plaintiff that her investment was safe, that her investment was a wise investment and that her investment would return a significant profit, knowing that the plaintiff would rely on these statements as a result of his position with the corporation.

G. Defendant Whitlock also represented his relationship with defendant Aduddell as a 30 year friendship and that both Whitlock and Aduddell had a substantial investment in the company and therefore encouraging plaintiff to risk nearly all of her net worth into what turned out to be a worthless corporation.

H. Defendants undertook a course of action to prohibit the plaintiff from discovering the fraud and misrepresentation by impeding requests for corporation information including stockholder lists, and information regarding the financial condition of the corporation.

-3-

I. Used intimidation against the plaintiff by using one of the corporation employees, namely, Randall Oberlag who stated in a conversation that if the plaintiff were to cause trouble for the corporation and wasn't careful the corporation would send one of their guys to "take care of her". Upon information and belief, Oberlag also monitored plaintiffs computer communications and other telephonic communications at the direction and request of these defendants.

J. Plaintiff requested that defendant Whitlock reimburse her for her losses and the most he would offer was $5,000.00 and a promissory note to repay defendant Whitlock. Plaintiff under duress and the stress of her financial needs (well known to defendant Whitlock) executed the promissory note to attempt to mitigate the existing financial devastation as a result of the misrepresentations, fraud and "con" like actions by defendant Whitlock with the help and complicity of defendant Aduddell.

\*\*\*

17. The plaintiff sent letters as a stockholder requesting information, requesting meeting minutes, and requesting other relevant data be supplied all of which was blocked by the defendants and the corporation which defendants "controlled".

18. Upon information and belief, the plaintiff believes that the defendants engaged in a course of conduct in violation of the securities and exchange act regulations and those laws that regulate publicly traded stock.

19. The defendants saw the plaintiff as an "easy mark" and relied upon their relationship together in order to defraud the plaintiff out of $60,000.00.

20. The stock became and remains worthless and upon information and belief the defendants made significant gains in their investments in the corporation without alerting plaintiff to the risks associated with her investment.

21. Plaintiff continues to be stonewalled and blocked with regard to her efforts to determine the true facts regarding the corporation and deceitful conduct of the defendants who fraudulently enticed her to purchase worthless stock.

\*\*\*

23. Upon information and belief, the defendants knew that the corporation stock was worthless.

\*\*\*

27. Upon information and belief, defendant Whitlock was attempting to obtain control of sufficient stock to control the corporation and ultimately retain the financially bankrupt corporation for his own uses and purposes. Whitlock had further advised plaintiff that the defendants entered into a power struggle over control of the corporation and control of other shareholders stock. Upon information and belief in order to further that purpose defendants accessed "nobo" list information that should not have been released to them and in violation of "nobo-obo" rules.

28. The defendants knew that the representations being made to the plaintiff

were false.

29. The defendants knew that the plaintiff would rely upon the representations of the defendants.

30. That the plaintiff did rely upon the representations of the defendants and as a result lost her entire $60,000.00 investment.

The second cause of action, for "libel, slander and defamation," includes the following allegations:

32. Upon information and belief, the defendants entered into a course of conduct to slander, defame, humiliate and cause irreparable harm to the plaintiff by actions which have resulted in the plaintiff being unable to obtain employment, being publicly ridiculed and having caused harm to her name and reputation, as well as mental and emotional distress. All with the purpose to keep the defendant "quiet" and so financially disadvantaged that she could not afford to protect her rights.

33. The actions of these defendants include among other things the following: electronic surveillance and direct surveillance of the plaintiffs actions and movements; interference with and interception of communications electronically and telephonically; conspiring with other third parties to prevent the plaintiff from earning a living; contacting and joining with persons associated with the plaintiffs community, private club and professional, social and personal networks and undertaken to discredit the plaintiff both personally and professionally.

34. As a result of these actions plaintiff has been unable to find gainful employment.

35. In addition, upon information and belief the defendants entered into a continuing course of conduct to prevent the plaintiff from learning the true facts about the corporation and its financial downfall. Defendants monitored the actions of the Plaintiff, invaded the plaintiff's telephone system and computer systems and used personal information to defame and slander the plaintiff, with information that would otherwise not be available to these defendants, including dissemination of negative information about the Plaintiff to prospective professional relationships and potential employers.

36. These surveillance activities continue, upon information and belief, to the present time.

37. As a result of the actions by these defendants against the plaintiff, plaintiff has suffered mental and emotional distress.

38. The defendants and defendant Whitlock in particular has followed a course of conduct for the intentional infliction of emotional distress and that such conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized community....

The third and final cause of action is for punitive damages. The complaint states that "the conduct of the defendants was intentional, malicious, and done in bad faith with the specific intent to harm the plaintiff personally and in the community and professionally causing irreparable harm, damage as well as mental and emotional distress."

Plaintiff seeks judgment for $60,000 on the first cause of action; $12 million on the second cause of action; and $12 million on the third cause of action for punitive damages.

## STANDARD ON MOTION TO DISMISS

Whitlock's motion to dismiss is directed towards the initial complaint, which was filed while plaintiff was represented by counsel. Plaintiff's counsel subsequently withdrew, and, in opposing the dismissal motion, plaintiff moves for leave to interpose the 250-page proposed amended complaint, which she drafted *pro se*.

In *Ashcroft v. Iqbal*, the Supreme Court explained the standard on a dismissal motion as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. ***

> Two working principles underlie our decision in [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)]. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *** Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged – but it has not shown – that the pleader is entitled to relief.

556 U.S. 662, 678 (2009) (citations, alterations, and quotation marks omitted). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A court is not, however, required to accept a complaint's legal conclusions as true. *See Iqbal*, 556 U.S. at 678. Rather, the court must determine whether the factual allegations plausibly give rise to an entitlement to relief. *See id.* Where a pleading is drafted by a *pro se* plaintiff, the submissions must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

"The court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). Moreover, a court should not dismiss a complaint without leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Leave to amend, however, is not required where amendment would be futile, that is, where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.*

### FRAUD - INITIAL COMPLAINT

The first cause of action in the initial complaint sounds in fraud and breach of contract. In alleging fraud, "a party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b).[2] A complaint making such allegations must "(1) specify the statements that the

---

[2] The applicable pleading requirement is established by federal law, which controls procedural matters in diversity cases; therefore, the heightened pleading standards of Federal Rules of Civil Procedure 9(b) apply to plaintiff's fraud claim. *See, e.g., MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 431 Fed.Appx. 17, 18 (2d Cir. 2011) (applying Fed. R. Civ. P. 9(b) heightened pleading standard, dismissing state law fraud claim). 5A Wright & Miller, *Federal Practice and Procedure* § 1297 (3d ed.

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013). "The actual fraudulent statements or conduct and the fraud alleged must be stated with particularity." *Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996). Here, the only allegations of specific fraudulent statements made by Whitlock are that he repeatedly stated that the investment was "a sure bet and a sure thing" and that he promised to "cover her investment if anything went wrong."

Plaintiff's allegation that Whitlock repeatedly said the stock was "a sure bet and a sure thing" read in the light most favorable to her, does not support a plausible claim for fraud. She does not state where or when the statements were made; thus, the complaint fails to meet the heightened pleading requirement of Rule 9(b). In addition, neither this alleged statement nor plaintiff's conclusory allegations regarding other representations by Whitlock regarding the investment support a fraud claim, because Whitlock's alleged statements are "mere 'puffery' or are opinions as to future events." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994); *accord Dooner v. Keefe, Bruyette & Woods, Inc.*, 157 F.Supp.2d 265, 278 (S.D.N.Y. 2001) (holding that statements that the initial public offering was a "done deal" and that the plaintiff would "make a lot of money" are not actionable); *compare Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000)

2014) states:

> Federal Rule of Civil Procedure 9(b) requires particularity in pleading the "circumstances constituting fraud." Since Rule 9(b) is a special pleading requirement, it concerns procedure in the federal courts and should govern in all civil actions, including all suits in which subject matter jurisdiction is based on diversity of citizenship or actions in which supplemental jurisdiction under Section 1367 of Title 28 of the United States Code is invoked. However, in diversity cases the law of the state in which the district court sits will control the content of the elements of a fraud claim or defense and the burden of proving fraud at trial in those cases.

(Footnote omitted.)

(vacating dismissal of fraud claim alleging that "defendants stated that the inventory situation was 'in good shape' or 'under control' while they allegedly knew that the contrary was true"; stating: "While statements containing simple economic projections, expressions of optimism, and other puffery are insufficient, defendants may be liable for misrepresentations of existing facts[.]" (citations omitted)).

Similarly, plaintiff's allegation that Whitlock "promised to 'cover her investment if anything went wrong'" does not support a fraud claim. The complaint fails to meet the heightened pleading requirement of Rule 9(b), because plaintiff does not state where or when the statement was made. Moreover, Whitlock's alleged statement is a "[m]ere promissory statement[] as to what will be done in the future," which is not actionable. *Adams v. Clark*, 239 N.Y. 403, 410 (1925). In addition, the facts alleged do not give rise to "a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Plaintiff's allegations are insufficient to plead that, at the time the promise was made, the promisor did not intend to honor the promise. *See Adams*, 239 N.Y. at 410 ("[T]he making of an unkept promise does not imply of necessity in all cases a present intention not to keep the promise."); *Dooner*, 157 F.Supp.2d at 279 ("For there to be a fraud claim, there must be more than a conclusory allegation that the defendant had no intention to perform a promise of future action."); *Helios Int'l S.A.R.L. v. Cantamessa USA*, 2014 WL 2119841, *20 (S.D.N.Y. 2014) ("[T]he allegation that Defendants failed to ultimately follow through on [the] alleged promise ... is insufficient to plead fraudulent intent."). Plaintiff's allegations regarding fraudulent intent rest merely on speculation and conclusory allegations. *See Lerner*, 459 F.3d at 290 (stating that, although Rule 9(b) permits intent to be "averred generally," it does not create "a license to base claims of fraud on

speculation and conclusory allegations."); *Adams*, 239 N.Y. at 410 ("Disappointed hopes are not the basis of legal liability."). The facts pleaded in the initial complaint are insufficient to raise plaintiff's right to relief on this claim above the speculative level. Plaintiff's first cause of action does not state a claim for fraud. The claim is dismissed with leave to replead, as set forth below.

### BREACH OF CONTRACT - INITIAL COMPLAINT

Plaintiff's allegation that Whitlock "promised to 'cover her investment if anything went wrong'" is too vague and conclusory to state a claim for a breach of contract. To establish a claim for breach of contract under New York law, a party must prove "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (citation and quotation marks omitted). The complaint fails to allege the essential terms of the parties' purported contract in nonconclusory language, nor does it allege when the agreement was made. Plaintiff's first cause of action does not state a claim for breach of contract. The claim is dismissed with leave to replead as discussed below.

### DEFAMATION - INITIAL COMPLAINT

Under New York law, a plaintiff may recover for defamation "by proving that the defendant published to a third party a defamatory statement of fact that was false, was made with the applicable level of fault, and either was defamatory *per se* or caused the plaintiff special harm, so long as the statement was not protected by privilege." *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011). Plaintiff need only satisfy the requirement of Rule 8(a)(2) that she set forth "a short and plain statement of the claim showing that [she] is entitled to relief."[3] Defamation

---

[3] New York State's strict pleading requirements for libel or slander, N.Y.C.P.L.R. 3016(a), do not apply in this diversity action. In federal diversity cases, procedural matters are governed by the Federal

-10-

allegations must, however, provide defendants with sufficient notice of the communications complained of to enable them to defend themselves. *See, e.g., Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 271 (2d Cir. 1999) (dismissing unsupported claim that an agent of defendant said "something bad" about plaintiff to a client). Plaintiff's defamation allegations fail to meet even Rule 8's liberal pleading requirement. They are irrational, fantastic, conclusory, and give no indication that plaintiff has actual knowledge of any specific instance in which either Whitlock or Aduddell published a defamatory statement about her to anyone at any time. Accepted as true and viewed in the light most favorable to plaintiff, the allegations in the second cause of action in the initial complaint fail to state a plausible claim. The cause of action is dismissed. As discussed below, the dismissal is without leave to replead.

## PUNITIVE DAMAGES – INITIAL COMPLAINT

A demand for punitive damages does not constitute a separate cause of action distinct from the substantive claim upon which it is grounded. *See Martin v. Dickson*, 100 Fed.Appx. 14, 16 (2d Cir. 2004). Accordingly, the punitive damages claim in the initial complaint is dismissed without prejudice. If plaintiff submits a redrafted proposed amended complaint in accordance with this Memorandum-Decision and Order, she may request punitive damages as an element of damages in connection with any or all of her causes of action.

## PROPOSED AMENDED COMPLAINT AGAINST WHITLOCK

**Fraud, breach of contract, and defamation**

In opposition to Whitlock's motion to dismiss and in support of her motion to amend, plaintiff submits a 250-page *pro se* proposed amended complaint. The Court reads all of

---

Rules of Civil Procedure, and "the mode of pleading defamation is governed by Rule 8" of the Federal Rules of Civil Procedure. *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir. 1986).

plaintiff's *pro se* submissions liberally and interprets them to raise the strongest arguments that they suggest. *See Triestman*, 470 F.3d at 474. In the amended complaint, plaintiff repeats the fraud, breach of contract, and defamation claims against Whitlock from the initial complaint. She adds no allegations that would cure the defects in these causes of action as originally pleaded. Therefore, even viewing plaintiff's proposed amended complaint with the added liberality to which it is entitled as a *pro se* pleading, the Court does not grant plaintiff leave to serve the proposed amended complaint with respect to the claims against Whitlock that have been carried over from the initial complaint.

Plaintiff's defamation allegations in the proposed amended complaint are as irrational, fantastic, conclusory, and futile as those in the initial complaint. Plaintiff's submissions do not support a reasonable inference that she may be able to state a plausible defamation claim against Whitlock, and do not warrant giving her another opportunity to plead the defamation allegations against him. Leave to replead the defamation claim against Whitlock is denied.

Plaintiff's submissions do, however, contain sufficient factual matter to warrant giving her an opportunity to submit a redrafted proposed amended complaint to replead the fraud and breach of contract claims against Whitlock. If plaintiff does replead these claims, the Court recommends that she set forth specific facts supporting each alleged act of misconduct, including the statement(s) upon which she relies; who made the statement; the date each act occurred; where it occurred; who was involved; and how the alleged misconduct supports her claim(s).

**Securities fraud**

Plaintiff's proposed amended complaint also asserts a securities fraud claim against Whitlock. A complaint alleging securities fraud must satisfy the heightened pleading requirement

applicable to all fraud claims, that is, that "the circumstances constituting fraud ... shall be stated with particularity." Fed. R. Civ. P. 9(b); *see ATSI Commc'ns*, 493 F.3d at 99. To satisfy Rule 9(b), a securities fraud complaint based on misrepresentation must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *See ATSI Commc'ns*, 493 F.3d at 99. Allegations that are conclusory or unsupported by factual assertions are insufficient. *Id.* Plaintiff's securities fraud claim, viewed most liberally in light of her *pro se* status, is deficient for the same reasons as her fraud claims, discussed above. Likewise, for essentially the same reasons, plaintiff's securities fraud claim fails to meet the pleading requirements of the Private Securities Litigation Reform Act. *See* 15 U.S.C. § 78u–4(b)(3). Read most liberally, the factual content pleaded by plaintiff throughout the proposed amended complaint does not support an order accepting the proposed amended complaint with respect to the securities fraud claim against Whitlock. The Court does, however, give plaintiff an opportunity to replead this claim. If plaintiff does replead these claims, the Court recommends that she set forth specific facts supporting each alleged act of misconduct, including the statement(s) upon which she relies; who made the statement; the date each act occurred; where it occurred; who was involved; and how the alleged misconduct supports her claim(s).

**RICO**

Plaintiff's proposed amended complaint further attempts to state a claim against Whitlock under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). A plaintiff alleging a civil RICO violation must allege: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests

-13-

in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Zavalidroga v. Cote*, 395 Fed.Appx. 737, 740-41 (2d Cir. 2010) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)).  Plaintiff asserts only broad, conclusory allegations such as, for example, that "defendants are involved in nearly every category of violation of the RICO Act laws, including drug trafficking through the Old Chatham Hunt Club, Inc. and murder-for-hire against her," and that "she has reason to believe these activities against her have been assisted by an organized crime network(s) in which certain defendants are associated."  The allegations are irrational, fantastic, conclusory, and do not support a RICO claim.  Read most liberally, the factual content pleaded by plaintiff in the proposed amended complaint does not support a reasonable inference that Whitlock is liable for RICO violations, nor does anything in the proposed amended complaint or plaintiff's other submissions suggest that there are additional facts which could support a plausible RICO claim if plaintiff were given another opportunity to plead it.  Therefore, even viewing the proposed amended complaint in light of all of plaintiff's submissions and with the added liberality to which it is entitled as a *pro se* pleading, the Court finds that amendment would be futile with respect to the RICO claim against Whitlock.  The Court does not give plaintiff an opportunity to replead this claim.

**Civil conspiracy**

The proposed amended complaint also includes a 34-page long claim for "civil conspiracy."  To state a claim for civil conspiracy under New York law,  plaintiff must allege an underlying tort, plus facts "sufficient to support an inference of the following elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the

parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage

or injury." *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012) (citation and quotation

marks omitted). The proposed amended complaint includes broad, non-factual allegations such as

that Whitlock "join[ed] forces with persons from her community and the private club she once

belonged to, the OCHC [Old Chatham Hunt Club], to construct leveraged illegal drug trafficking

and other illegal financial 'deals' to incentivize as many persons as possible to work with them

against Plaintiff and her interests so that they could gang-up on her with fuller force and prevent

her from holding them accountable for illegal activities that harmed her"; that "Jerry Whitlock

and technology professionals who are employed by him formed a conspiracy to illegally (a) tap

plaintiffs phones, (b) hack into plaintiffs computer, and (c) surveil her in a multitude of intrusive

and invasive ways involving GPS and other technologies and persons in order to collect legally

protected private information and act on using that information to harm and injure and interfere

with plaintiff's interests of every aspect"; and that Whitlock and coconspirators examined "[a]ll

contractors and workers who plaintiff sought the services of to work around her home and

property, those who were in her cell phone contact lists, persons who contacted her by mail,

lawyers, doctors, professionals of all kinds, people at the places where she does day-to-day

errands, neighbors, meter readers, utility contacts, financial professionals, every conceivable

entity of any kind that plaintiff interacts with ... to learn who could be accessed and used by

defendants to 'inform' against plaintiff, get into her house, spy on her and her activities, betray

her confidences and interests of all kinds." The civil conspiracy claim is replete with such

irrational, delusional, and inflammatory allegations, which are typical of the proposed amended

complaint. These generalized allegations are not supported by specific factual content and fail to

plead a plausible civil conspiracy claim or any other claim against Whitlock. In the same vein, plaintiff sets forth additional claims against Whitlock, including a claim for intentional infliction of emotional distress, privacy violation claims, and another defamation claim. All suffer from the same failure to set forth rational factual content that allows the Court to draw the reasonable inference that plaintiff has a plausible claim against Whitlock. Nor does anything in the proposed amended complaint or plaintiff's other submissions suggest that there are additional facts which could support such claims if plaintiff were given another opportunity to amend. Therefore, even viewing the proposed amended complaint with the added liberality to which it is entitled as a *pro se* pleading, the Court finds that amendment to add these new claims against Whitlock would be futile. The Court does not give plaintiff an opportunity to replead this claim.

**Conclusion**

As to Whitlock, therefore, the Court allows plaintiff an opportunity to redraft her amended complaint to plead only the following claims against him: fraud, breach of contract, and securities fraud. Amendment to add all other claims against Whitlock is denied. If plaintiff files a redrafted amended complaint, the District Court will review it and, if the Court accepts it as redrafted, the Court will refer the matter back to the Magistrate Judge to supervise the progress of the case.

## PROPOSED AMENDED COMPLAINT AGAINST ADUDDELL

For the same reasons, the Court allows plaintiff an opportunity to redraft her proposed amended complaint as to Aduddell to assert only the following claims against him: fraud, breach of contract, and securities fraud. Amendment to add all other claims against Aduddell is denied as futile. If plaintiff files a redrafted amended complaint, the District Court will review it and, if the Court accepts it as redrafted, the Court will refer the matter back to the Magistrate Judge to

supervise the progress of the case.

## PROPOSED AMENDED COMPLAINT AGAINST NEW DEFENDANTS

Plaintiff's proposed amended complaint, filed in support of her motion for leave to amend her complaint (Dkt. No. 49), adds 30 defendants who were not named in the initial complaint. All the proposed new defendants are New York residents. Therefore, there is no basis for District Court to exercise diversity jurisdiction over them. The Court must determine whether there is any other ground for asserting subject-matter jurisdiction over the proposed new defendants.

District courts have original "federal question" jurisdiction over "all civil actions arising under the Constitution [or] laws ... of the United States." 28 U.S.C. § 1331. The proposed amended complaint asserts a number of claims purporting to raise federal questions. The Court now addresses these claims.

The proposed amended complaint sets forth a claim for civil conspiracy, citing 18 U.S.C. § § 241 and 371, as well as 42 U.S.C. § 1983. Sections 241 and 371 are criminal statutes which do not provide a private right of action. *See Maier v. Phillips*, 205 F.3d 1323 (Table), 2000 WL 234453, *2 (2d Cir. Feb. 1, 2000). With respect to any claim under 42 U.S.C. § 1983, no private individual can be sued under this section absent a plausible allegation that he or she acted under color of state law. *See Basile v. Connolly*, 538 Fed.Appx. 5, 7 (2d Cir. 2013). There is no plausible allegation that any of the defendants named in this cause of action acted under color of state law or conspired with a state actor. If plaintiff's allegations in her separate section 1983 claim (discussed below) are read into this claim, any such claim is time-barred. This cause of action fails to state a federal claim.

The proposed amended complaint also asserts a claim for unlawful interception,

disclosure, and use of communication, citing 18 U.S.C. §§ 2511, 2515, 2520, and 2521. While 18 U.S.C. § 2520(a) authorizes a private right of action for "any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used" in violation of the Wire and Electronic Communications Interception and Interception of Oral Communications Act, 18 U.S.C. §§ 2510-2522, there is nothing in the proposed amended complaint to link any of the defendants with the incidents related by plaintiff in support of this claim. No matter how liberally construed, these irrational, incredible allegations do not plead a plausible claim under this act, nor is there any basis to believe that there are additional facts which could plausibly support such a claim if plaintiff were given another opportunity to amend. These allegations do not state a federal claim.

The allegations in support of the cause of action for "Unlawful detention of U.S. mail" do not plead a plausible claim under federal law. There is no allegation in the proposed amended complaint that would connect any defendant to any interference with plaintiff's mail. In any event, the criminal statutes cited by plaintiff, 18 U.S.C. §§ 1702, 1703, 1708, do not support a private right of action. *See Johnston v. Torres*, 1990 WL 195926, *2 (S.D.N.Y. Nov. 27, 1990). To the extent that plaintiff attempts to assert a claim against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.*, the proposed amended complaint fails to plead exhaustion of her administrative remedies prior to filing a complaint as required by 28 U.S.C. § 2675(a).

Plaintiff next asserts a claim under 42 U.S.C. § 1983 alleging various deprivations of her constitutional rights. This cause of action includes allegations that from September 14 - 17, 2009 she was wrongfully arrested and taken to the hospital; that State Trooper Todd Hyson (not a

-18-

named defendant) used excessive force in her arrest; and that defendant Robert Bradford and others conspired with law enforcement officers in arranging for the arrest. All claims based on this incident are subject to the three-year statute of limitations applicable to section 1983 claims. The proposed amended complaint was filed February 13, 2014, more than three years after the September 2009 incidents alleged. There is no basis for this claim to relate back to the initial complaint; therefore, it is time-barred and cannot support federal jurisdiction.

Plaintiff asserts a civil RICO claim. As noted above, to state a civil RICO claim, a complaint must allege: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Zavalidroga*, 395 Fed.Appx. at 740-41 (quoting *Moss*, 719 F.2d at 17). As discussed in connection with plaintiff's claims against Whitlock, the allegations in the proposed amended complaint are irrational, fantastic, conclusory, and do not support a RICO claim. Read most liberally, the factual content pleaded by plaintiff in the proposed amended complaint does not support a reasonable inference that any of the proposed new defendants were involved in RICO violations, nor does the proposed amended complaint provide any basis to believe that there are additional facts which could support a plausible RICO claim if plaintiff were given another opportunity to amend. Therefore, even viewing the proposed amended complaint with the added liberality to which it is entitled as a *pro se* pleading, this claim fails to state a cause of action. It does not support federal jurisdiction.

Plaintiff also asserts an employment discrimination cause of action. No employer or former employer of plaintiff is named as a party, and there is no other basis for a claim under 42

U.S.C. § 2000e-2. This cause of action does not state a claim under federal law.

Plaintiff alleges she was subjected to "gender-based discrimination by a private club." This cause of action alleges that the Old Chatham Hunt Club, Inc., a private club that receives revenue from non-members and offers public accommodation, has discriminated against her on the basis of her gender by restricting her access to the private club. The facts alleged do not support a finding that the hunt club is an establishment covered by 42 U.S.C. § 2000a. In any event, plaintiff's allegations do not plausibly support a claim of gender discrimination. Plaintiff alleges no specific occurrence supporting her claim. The allegations that defendants "restricted" her access to the club, that she has "no access" to the club or its facilities, and that she is "ineligible to participate" do not support a gender discrimination claim merely because she is female; indeed, half of the club members named in the proposed amended complaint are female. The proposed amended complaint fails to plead a claim under 42 U.S.C. § 2000a.

Upon thorough review of the proposed amended complaint and plaintiff's other submissions, the Court finds no plausible claim against the new defendants under the federal constitution or laws. Further, there is nothing in the proposed amended complaint or plaintiff's other submissions to suggest that there are additional facts which could support a federal claim against the new defendants if plaintiff were given another opportunity to amend. Accordingly, there is no basis for federal question jurisdiction. Plaintiff's motion for leave to serve the proposed amended complaint as to all defendants named for the first time in the proposed amended complaint is denied for lack of subject-matter jurisdiction.

## CONCLUSION

In conclusion, Whitlock's motion (Dkt. No. 42) to dismiss the complaint is granted,

except that plaintiff is given leave to amend her complaint as follows. Plaintiff's motion (Dkt. No. 49) for leave to amend the complaint is granted to the extent that plaintiff is given leave to redraft her proposed amended complaint to assert ONLY the following claims: fraud, breach of contract, and securities fraud, against defendants Whitlock and Aduddell ONLY. Amendment to add all other claims against Whitlock and Aduddell is denied.

Federal court lacks subject-matter jurisdiction over all claims in the proposed amended complaint against all defendants except Whitlock and Aduddell. As to all defendants except Whitlock and Aduddell, the motion (Dkt. No. 49) to amend is denied for lack of federal jurisdiction.

If plaintiff files a redrafted amended complaint against Whitlock and Aduddell repleading her causes of action for fraud, breach of contract, and securities fraud, District Court will review it. If the Court accepts the amended complaint as redrafted, the Court will refer the matter back to the Magistrate Judge to supervise the progress of the case. Any amended complaint shall supersede and replace in its entirety the previous complaint; therefore, no portion of the initial complaint shall be incorporated into the amended complaint by reference. If plaintiff files a redrafted proposed amended complaint, the Court recommends that she include a separate numbered paragraph for each allegation, specifying (i) the alleged act of misconduct; (ii) the date it occurred; (ii) where it occurred; (iii) whether Whitlock or Aduddell or both participated in such misconduct; and (v) how the alleged misconduct supports plaintiff's claim(s).

It is therefore

ORDERED that defendant Jerry Whitlock's motion (Dkt. No. 42) to dismiss the initial complaint is granted, and plaintiff is given leave to file a redrafted proposed amended complaint

in accordance with this Memorandum-Decision and Order; and it is further

ORDERED that plaintiff's motion (Dkt. No. 49) for leave to amend the complaint is granted in part and denied in part in accordance with this Memorandum-Decision and Order; and it is further

ORDERED that plaintiff is given leave to file a redrafted amended complaint limited to claims against Jerry Whitlock and Timothy Aduddell for fraud, breach of contract, and securities fraud; and it is further

ORDERED that leave to amend as against all defendants named for the first time in the proposed amended complaint is denied on the ground of lack of federal jurisdiction; and it is further

ORDERED that if plaintiff files a redrafted amended complaint, the District Court will review it and, if the Court accepts it as redrafted, the Court will refer the matter back to the Magistrate Judge to supervise the progress of the case; and it is further

ORDERED that **IF PLAINTIFF DOES NOT FILE A PROPOSED AMENDED COMPLAINT WITH THE COURT WITHIN 30 DAYS OF THE DATE OF THIS ORDER, THE CASE WILL BE DISMISSED IN ITS ENTIRETY**; and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York, and to serve plaintiff by regular mail and certified mail, return receipt requested.

IT IS SO ORDERED.

Date:   September 17, 2014
        Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge